SPACH, CAPALDI & WAGGAMAN, LLP
Madison S. Spach, Jr. (SBN 94405)
    mspach@scwlawfirm.com
Thomas E. Walling (SBN 186878)
    twalling@scwlawfirm.com
Shaheen A. Etemadi (SBN 319138)
    setemadi@scwlawfirm.com
4675 MacArthur Court, Suite 550
Newport Beach, California 92660
Telephone: (949) 852-0710
Facsimile: (949) 852-0714

Attorneys for Plaintiff
CHRISTOPHER L. KNOWLES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER L. KNOWLES, an individual; | Case No. |
| Plaintiff, | |
| v. | COMPLAINT FOR: |
| SPIN MASTER, INC., a Delaware corporation; | 1. Copyright Infringement (17 U.S.C. §§ 101, *et seq.*); |
| SPIN MASTER STUDIOS, INC., a Delaware corporation; | 2. Contributory Copyright Infringement; |
| SPIN MASTER LTD., a Canada corporation; | 3. Vicarious Copyright Infringement; |
| NICKELODEON ANIMATION STUDIOS INC., a Delaware corporation; and | 4. Violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); |
| VIACOM INTERNATIONAL INC., a Delaware corporation, | 5. Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*); |
| Defendants. | 6. Accounting; and |
| | 7. Cancellation of Trademark Application (15 U.S.C. § 1119). |

**DEMAND FOR JURY TRIAL**

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

**COMPLAINT**

Plaintiff Christopher L. Knowles ("Knowles" or "Plaintiff"), alleges the following against Spin Master, Inc., Spin Master Studios, Inc., Spin Master Ltd., Nickelodeon Animation Studios Inc., and Viacom International Inc. (collectively, "Defendants"):

**INTRODUCTION**

1.     This case involves the wrongful misappropriation and use of Plaintiff's original copyrighted and creative work titled *Rivets & Ruby*.

2.     *Rivets & Ruby* is a unique comic book series written by Knowles and first published in 1996; it has been continuously available at Comic-Con events in San Diego, California and has been available at comic book outlets and over the internet since its original publication.  *Rivets & Ruby* features a pair of companions, tech savvy "Ruby" and "Rivets," the robot companion she constructed, who work together from a salvage yard containing used computers, robots and their spare parts.  Under the tutelage of the senior mentor, "Professor Herbert," Rivets and Ruby construct, modify and customize existing computers and robots from the spare parts found in the salvage yard.  Rivets and Ruby create, and are surrounded by, a group of satellite companion robots and characters to assist them in their various rescue adventures.  One of the major themes of *Rivets & Ruby* is the interaction and socialization between humans, *i.e.*, Ruby, and satellite companion robots.

3.     Plaintiff first copyrighted the text of *Rivets & Ruby* with the U.S. Copyright Office in 1996, and then copyrighted his comic books under that name in 1998. To market *Rivets & Ruby*, Plaintiff appeared at several San Diego Comic-Con International conventions through 2004, and the comic books have been widely accessible at comic book outlets and over the Internet during the last two decades.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

4.    In 2016, Viacom's Nickelodeon aired the first episode of a cartoon show developed and produced by Spin Master titled *Rusty Rivets*.

5.    Defendants' *Rusty Rivets* features a pair of tech savvy companions having virtually identical names, "Rusty Rivets" and "Ruby," who also work from a salvage (recycling) yard containing used computers, robots and their spare parts.  Rusty Rivets and Ruby similarly work under the tutelage of a senior mentor, "Mr. Higgins," to construct, modify and customize existing computers and robots from the spare parts contained in the recycling yard. Rusty Rivets and Ruby similarly create, and are surrounded by, a group of satellite companion robots (called the "rescue bots") and characters that assist in their various rescue-themed adventures. The array of satellite companions exhibits numerous striking similarities to, and in some instances are virtually identical with, the individual satellite companions that surround the two main characters in the original *Rivets & Ruby*. *Rusty Rivets* is similarly based on the socialization and interactions between the "human" characters and the group of satellite robot companions.

6.    Defendants' copying of *Rivets & Ruby* is not the first time Defendants have sought to profit off someone else's copyrighted creative works and property. In fact, it has apparently become a business model of Spin Master and Nickelodeon to copy other artists' copyrighted works for their own profit when developing children's programming.

7.    In 2014, Spin Master and Viacom were accused of arrogating for their own profit the copyrighted artistic and literary works of Richard Postman ("Postman"), who had pitched a work to Defendants in 2006 and 2007 of a cartoon show about a team of heroic, anthropomorphic dogs with clearly identifiable specialized traits and characteristics, led by a tech-savvy human boy. After informing Postman that they were going to "pass" on his work, Defendants

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

took Postman's works and created their animated children's cartoon *PAW Patrol* franchise, which they debuted in 2013, ultimately making millions off Postman's copyrighted creative works. (*Richard Postman v. Spin Master Ltd., et al.*, USDC Case #2:14-CV-005516.)

8.     On its corporate website, Defendant Spin Master blithely states that it values "ideas – no matter where they come from," and "Integrity – Always. No fooling." Such a statement, and its attempt at humor, is deeply ironic given that



Spin Master has demonstrated through *PAW Patrol* and *Rusty Rivets* its willingness to misappropriate other people's artistic and literary work, wherever it finds them, without notifying or compensating the original creators. To make matters worse, Spin Master has openly gloated that it will continue to reap the benefits resulting from the "global success" of both *PAW Patrol* and *Rusty Rivets*, as highlighted in the Letter to Shareholders contained in Spin Master's 2016 Annual Report: "The global success of *PAW Patrol* and *Rusty Rivets* has strengthened our relationship with Nickelodeon and paved the way for future television franchises." Simply put, Defendants' wrongful misappropriation of Plaintiff's original copyrighted works was deliberate and tactical and in line with Spin Master's business model.

9.   *Rusty Rivets* is too similar to *Rivets & Ruby* to be coincidental; indisputably, *Rusty Rivets* is not an independent creation. Plaintiff brings this lawsuit seeking damages and/or injunctive relief to prevent Defendants from further infringing on his rights to his original copyrighted works.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sections 1331 and 1338(a). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

11.   Venue in this district is proper under 28 U.S.C. Section 1391(b)(1)-(2) in that the claims asserted in this Complaint arose in the Central District of California and/or one or more of the defendants resides in the Central District of California.

## THE PARTIES

12.   Plaintiff is an individual residing in the State of New Jersey and is the sole owner of the copyrighted works that are the subject of this litigation.

13.   Plaintiff is informed and believes and thereon alleges that Defendant Spin Master, Inc. is a Delaware corporation with its principal place of business in Ontario, Canada, but with its principal office within the State of California located within the City of Los Angeles. Spin Master, Inc. is believed to be the creator/producer of the infringing *Rusty Rivets* franchise, including its animated cartoon series, toys and merchandise, which is based upon and/or derived from Plaintiff's original copyrighted works.

14.   Plaintiff is informed and believes and thereon alleges that Defendant Spin Master Studios, Inc. is a Delaware corporation with its principal place of

business in Williamsville, New York, but with its principal office within the State of California located within the City of Los Angeles. Spin Master Studios, Inc. is believed to be involved in some manner in the creation of the infringing animated cartoon series *Rusty Rivets*, which is based upon and/or derived from Plaintiff's original copyrighted works.

15.  Plaintiff is informed and believes and thereon alleges that Defendant Spin Master Ltd. is a Canada corporation, with its principal office within the State of California located within the City of Los Angeles. Spin Master Ltd. is believed to be publishing infringing content on its website, rustyrivets.com, which is based upon and/or derived from Plaintiff's original copyrighted works and is also believed to be involved in some manner in the creation of the infringing animated cartoon series *Rusty Rivets*. *Rusty Rivets* has quickly become one of the top-rated television shows for children and has enjoyed tremendous success, and airs worldwide, including in California. Defendants have created, marketed, and sold a variety of merchandise based upon its *Rusty Rivets* franchise, including but not limited to toys, books, coloring books, and other items. In fact, the *Rusty Rivets* toy line is launching *globally* in August 2018. According to Nielsen data, new episodes of *Rusty Rivets* are ranked in the #3 spot for both kids and boys ages 2 to 5, as noted by Spin Master's co-founder and co-CEO Ronnen Harary during the Quarter 1 2018 Spin Master Earnings Call, dated May 9, 2018. According to Harary, Spin Master is currently developing *Rusty Rivets* Season 3 together with Nickelodeon.

16. Plaintiff is informed and believes and thereon alleges that Nickelodeon Animation Studios Inc. ("Nickelodeon"), is a Delaware corporation with its principal place of business in New York City, New York, but with its principal office within the State of California located within the City of Los Angeles. Nickelodeon is a producer of and/or is broadcasting the infringing

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

animated cartoon series, *Rusty Rivets*, which is based upon and/or derived from Plaintiff's original copyrighted works, as well as publishing infringing content on its website, www.nickjr.com. Nickelodeon is also believed to be involved in some manner in the creation of the infringing animated cartoon series *Rusty Rivets* and is enjoying a share of the profits therefrom and thus has a direct financial interest in the infringing activity.

17.   Plaintiff is informed and believes and thereon alleges that Viacom International Inc. ("Viacom") is a Delaware corporation with its principal place of business in New York, New York. Viacom is believed to be the owner of Nickelodeon and is facilitating the publication and distribution of the infringing *Rusty Rivets* cartoon series and enjoying a share of the profits therefrom. Viacom is also publishing the infringing animated cartoon series, *Rusty Rivets* and other infringing content, which is based upon and/or derived from Plaintiff's original copyrighted works, and on its website, www.nickjr.com, which lists Viacom as holding the copyright for the site and its content.  Thus, Viacom has a direct financial interest in the infringing activity.

18.   Plaintiff is informed and believes, and on that basis alleges, that at all relevant times mentioned in this complaint, Defendants and each of them, were and are acting in concert and active participation with each other in committing the wrongful acts alleged herein and were and are the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent, and approval of one another.

## STANDING

19.   Plaintiff has standing to bring this claim because:

      A. At all times mentioned herein, Plaintiff is and was the sole owner of the copyrighted works that are being infringed upon by Defendants;

B. As the owner of copyrighted works, Plaintiff is within the class of persons or entities entitled to enforce their rights under the United States Copyright Law;

C. Plaintiff has been, and is continuing to be, directly affected and harmed by the impact of the Defendants' wrongful appropriation and infringement of his original copyrighted works as alleged in this Complaint;

D. Plaintiff has suffered an injury in fact because Defendants have profited enormously from their infringement on Plaintiff's original copyrighted works, while denying Plaintiff his right to the profits from his original copyrighted works and any works and merchandise derived therefrom;

E. Plaintiff's damages are directly traceable to the actions of the Defendants in infringing on Plaintiff's original copyrighted works by (i) developing, publishing, and distributing a cartoon series based on Plaintiff's original copyrighted works, (ii) developing and distributing books, toys and other merchandise including artwork, characters, designs, stories, and other unique elements of expression, copied or derived from Plaintiff's original copyrighted works; and

F. In light of Defendants' refusal to cease their infringement, or compensate Plaintiff for his damages, an injunction is necessary to prevent Defendants from continuing to profit unfairly from Plaintiff's original copyrighted works.

## **BACKGROUND FACTS**

20. Plaintiff Knowles is a professional illustrator and artist who has been involved in the comic book and entertainment industry for over twenty years

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

working on several high-profile properties both for third parties and of his own creation.

21.  For many years, Knowles has been working with Marvel Enterprises on popular feature film franchises *X-Men*, *Thor*, *Iron Man*, *Spider Man*, *The Avengers*, and *Black Panther*, among others, as well as his well-known book *Our Gods Wear Spandex: The Secret History of Comic Book Heroes*, which won the Eagle Award in 2008 for the "Favourite Comics-Related Book."

22.  Plaintiff first created and copyrighted the text of his original comic book property *Rivets & Ruby* with the United States Copyright Office on or about August 7, 1996 (Copyright # TXu000752232). He added the artwork to *Rivets & Ruby* in conjunction with illustrator Ken ("Kenny") Kiernan, registering the completed comic book with the United States Copyright Office on or about May 21, 1997 (Copyright # VAu000399069). He followed that up with a *Rivets & Ruby* adventure titled "*Whither cometh the Rivetman?: a brand-new Rivets-n-Ruby adventure!*"—which he registered in or about April of 1998 (Copyright #VA0000937568).

23.  Sci-Fi Universe magazine featured *Rivets & Ruby* in its Volume 4 Issue No. 1 in April of 1998.

24.  Ultimately, Plaintiff created three comic book issues of his *Rivets & Ruby* property, as well as a graphic book/novel compilation of the three episodes that was published in 2004; the three comic book issues remain in circulation. Plaintiff is currently the sole owner of the copyrights to these original creative works.

## DEFENDANTS' INFRINGING WORKS

25.  In creating *Rusty Rivets*, Defendants copied numerous unique elements of expression from Plaintiff's copyrighted works, including, without limitation, the title, plot/theme, setting, character traits and interactions, and

other visual elements. *Rusty Rivets* and its derivative products blatantly infringe on Knowles' copyrighted works, bearing so many striking similarities to *Rivets & Ruby* that it is an absolute impossibility that *Rusty Rivets* was an independent creation.

**Title**

26.  Defendants titled their animated cartoon series *Rusty Rivets*, not only copying the "Rivets" name but echoing the alliterative "R-R" consonantal sequence of *Rivets & Ruby*. Defendants further wrongfully misappropriated Plaintiff's use of the term "rivet" (which describes a short metal pin or bolt for holding together two plates of metal) in metaphorically naming the *construction* robot Rivets by merely tacking "Rivets" onto "Rusty" to create *Rusty Rivets*. In addition, like Plaintiff's *Rivets & Ruby*, Defendants chose to name one of their main characters Ruby. The confusion arising from Defendants' use of the same title name and character names in their animated cartoon series *Rusty Rivets* is best illustrated by a simple Google image search for "*Rivets & Ruby*," which reveals images of Rusty Rivets, Ruby Ramirez, ***and*** Plaintiff's comic books.

**Plot/Theme**

27.  The plot and theme of Plaintiff's *Rivets & Ruby* and Defendants' *Rusty Rivets* is virtually identical. The characters' actions and the rescue operations/plots for each episode originate from a salvage yard (a "robot graveyard" in *Rivets & Ruby*, and a "recycling yard" in *Rusty Rivets*) and the main human characters build companion robots (called "rescue robots" and "bits" in *Rusty Rivets*) from spare parts, assisted by an older male inventor who acts as their mentor ("Professor Herbert" in *Rivets & Ruby*; "Mr. Higgins" in *Rusty Rivets*).[1]  Similar to *Rivets & Ruby*, a major theme of *Rusty Rivets* is the

---

[1]  Note the selection of the name *Mr.* Higgins for Defendants' cartoon, as opposed to *Professor* Higgins in the movie *My Fair Lady*; this would appear to be intended to evoke the idea of a "professor" without actually using that title.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

interaction and socialization between humans, *i.e.*, Rusty and Ruby, and the robots.

**Settings**

28.  Just like *Rivets & Ruby*, *Rusty Rivets* centers around a recycling yard containing computer and robot parts for use in the building and customization of robot companions. Again, as in *Rivets & Ruby*, the human and newly assembled robot companion characters then engage in adventures that take place outside of the salvage/recycling yard with the adventures in both works occurring in the city and local community.

**Characters**

29.  Defendants, in creating their "Rusty Rivets" and "Ruby" characters, misappropriated the traits of Plaintiff's Ruby character as follows:

- Like Plaintiff's "Ruby," Defendants' "Ruby" is an electronics and robotics prodigy and a Hispanic female;

- Like Plaintiff's "Ruby," Defendants' "Rusty" is a confident, curious maker, innovator, and designer who always wears a tool belt and has a "fascination with gadgetry and machines";

- Like Plaintiff's "Ruby," Defendants' "Rusty" has been "collecting and assembling incredible creations" at the salvage yard;

- Like Plaintiff's "Ruby," Defendants' "Rusty" is also a "curious kid who loves figuring things out, piecing things together, and using [her] skills to help [her] community";

- Plaintiff's "Ruby" is best friends with "Rivets," a construction robot, ever since she repaired him and brought him back to life, while Defendants' "Ruby" is best friends with "Rusty Rivets," ever since "they turned her broken skateboard into a solar-powered, laser-guided buggy with onboard GPS";

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

- Like Plaintiff's "Ruby," Defendants' "Ruby" is an expert in "all things mechanical and electrical" and both Plaintiff's and Defendants' "Ruby" characters "built and programmed her own robotic pooch." In Plaintiff's comic book, the robot dog is named "Doggie Jones," while Defendants named their dog robot character "Bytes";

- Like Plaintiff's "Ruby," both of Defendants' characters "Rusty" and "Ruby" wear a tool belt and use a variety of tools to build and repair their robots;

- Like Plaintiff's "Ruby," Defendants' "Ruby" is "an active girl who sees every day as an opportunity for play." Plaintiff's "Ruby" hangs out with her boyfriend, plays games with her robot friends, and enjoys a good time;

- Like Plaintiff's "Ruby," Defendants' "Ruby" is "endlessly supportive" of her friends, and she loves helping Professor Herbert in the lab at the salvage yard;

- Similar to Plaintiff's "Ruby," Defendants' "Ruby" has black hair and eyelashes coming to a point in the corner of her eyes and breaking at the bottom half of her eyes.

30. Like *Rivets & Ruby*, *Rusty Rivets* features male and female companion characters that are conceptually identical, with Defendants merely making the *Rusty Rivets* characters younger versions of Ruby and her boyfriend Cole Axial from Plaintiff's comic books.[2]

---

[2] Note that many successful entertainment franchises create spin-offs based upon younger versions of the characters (i.e., "Little Archie" versions of Archie Comics stars, "Tiny Titans" version of DC Comics Teen Titans, "X-File Origins" version of The X-Files' Mulder and Scully).

Complaint

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

31.  In addition, as noted above, like Professor Herbert in *Rivets & Ruby*, Mr. Higgins in *Rusty Rivets* is a prominent older male inventor and mentor to the main characters in their robot-building efforts.

32.  Like Plaintiff's *Rivets & Ruby*, Defendants' *Rusty Rivets* features very cute sidekick robots with unique traits including a dog robot companion to "Ruby," and arch-enemies that they must overcome ("Arthur" in *Rivets & Ruby*; "Frankie Fritz" in *Rusty Rivets*).  Defendants have merely juvenilized their cute sidekick robot characters in some respects to conform to the overall look of *Rusty Rivets* and appeal to the younger audience that is the target for Defendants' animated cartoon television show. The striking similarities are nonetheless too many to simply be a coincidence.

33.  For example, like "Desktop" in *Rivets & Ruby*, "Jack" in *Rusty Rivets*



• **"Jack" is the most prominent character of the "Bits" in *Rusty Rivets*.** Like "Desktop" in *Rivets & Ruby*, "Jack" is box-shaped, has similar shoulder joints, articulated eyebrows and uses tank-style treads ("continuous tracks") to ambulate.

As with "Desktop," "Jack's" main body chassis is elevated from the continuous track.



1. CONTINUOUS TRACK AMBULATION
2. ELEVATED BOX-SHAPED CHASSIS
3. ROBOTIC ARMS with CONTOURED WEDGE SHOULDERS
4. ARTICULATED EYEBROWS

is box-shaped with articulated eyebrows, robotic arms with contoured wedge shoulders, and an elevated chassis consisting of tank-style treads.

34.   Other striking similarities exist as well:

- Like Plaintiff's *Rivets & Ruby*, which has a Boston Terrier/Bulldog character "Doggie Jones," Defendants' *Rusty Rivets* has a Boston Terrier/Bulldog robot character named "Bytes."



•*Rivets & Ruby* features a dog robot character ("Doggie Jones"), which is constructed of non-canine appearing spare parts. "Doggie Jones" is a companion to Ruby and Cole and is based on a Boston Terrier AKA Boston Bulldog, a "Mastiff" type breed.



•*Rusty Rivets* also features a dog character ("Bytes") constructed of non-canine appearing spare parts.

•Like "Doggie Jones" in *Rivets & Ruby*, "Bytes" is a bulldog or mastiff type.

- Like Plaintiff's character Rivets in *Rivets & Ruby*, Defendants' character Botasaur is similar in size in relation to the other satellite companion robots. Moreover, like the evil robots in *Rivets & Ruby*, Botasaur is green, as depicted on the cover of *Rivets & Ruby* #1, has a drop-scoop jaw, and a virtually identical three-tooth design on the jaw.



• *Rusty Rivets*' "Botasaur" has a similar drop-scoop jaw to the "evil robots" in *Rivets & Ruby* #1. Note three tooth-shapes on jaw.

Plaintiff's comic books also depict Ruby riding on Rivets' back to the scene of an adventure. Episodes of Defendants' cartoon series also show Rusty riding Botasaur.





SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

- Like Atlas in Plaintiff's *Rivets & Ruby*, Defendants' character Flingbot is an oversized robot with a diamond-shaped torso, a recessed chest disc with cutaway details, a collar detail with linear striations, a dome-like head with undefined circular eyes, and claw-formed hands. Both Atlas and Flingbot help around their respective yards with the heavy lifting tasks.



- Like Cal Q. Lattor in *Rivets & Ruby*, Defendants' satellite robot character on the cover of Defendants' "*Far-Out Friends! Rusty Rivets – Step Into Reading*" (Random House 2017) is a spherical robot with extended arms, and a disc shape attached to the top of its head.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law



- Both characters are self-contained spheroids, with extended robot arms and disk-shapes attached to the top of the heads (a solar-power collector for *Rivets & Ruby's* "Cal Q. Lattor" and a satellite dish for the *Rusty Rivets* character).

- Like TV Tim in *Rivets & Ruby*, Defendants' character Ray is capable of transmitting information to Ruby and the others. Similar to Plaintiff's character TV Tim, who is able to view video from televisions and closed-circuit TV surveillance systems and forward that information to Ruby or the other robots, Defendants' character Ray has "a beam that can spread as wide as a spotlight or as narrow as a laser pointer, as well as a camera for shooting photos or video to be viewed on Ruby's tablet…."



- As noted above, Defendants copy the utilization of a mentor to guide the main characters in the repair and modification of the robots

("Professor Herbert" in *Rivets & Ruby*, and "Mr. Higgins" in *Rusty Rivets).*

 

**Character Interactions**

35. Not only are the characters in *Rivets & Ruby* strikingly similar in appearance to those in *Rusty Rivets*, Defendants have copied many of the character interactions as well. Like Plaintiff's Ruby character, who has a special bond with the dog robot companion Doggie Jones, Defendant's Ruby character has a special bond with the dog robot companion Bytes.

 

36. Like Desktop in *Rivets & Ruby*, Jack in *Rusty Rivets* takes on a leadership role, leading the other cute companion robots away from the human characters and the recycling yard.



- In *Rivets & Ruby*, the cute, homemade robot characters are able to act independently and with agency. We see them apart from the human characters and away from their home in the "Robot Graveyard."



- We see the same independence and agency with the cute, homemade robot characters ("Bits") in *Rusty Rivets*. We see them apart from the human characters and away from their home in the "recycling yard."

37. Perhaps most tellingly, as in *Rivets & Ruby*, the main characters in *Rusty Rivets* and their cute sidekick robots travel outside of salvage/recycling yard and engage in various rescue-based social activities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



• In both *Rivets & Ruby* and *Rusty Rivets* we see the cute sidekick robots travel around outside their home base. *Rivets & Ruby* also features "Cole Axial," "Ruby's" boyfriend (introduced in *Rivets & Ruby #2*)



• *Rusty Rivets'* "Rusty" and "Ruby" strongly resemble younger versions of **Rivets & Ruby's** "Ruby" and "Cole Axial."

• *Rusty Rivets* portrays the same relationship between the main characters and the cute, homemade sidekick robots we see in **Rivets & Ruby**.

    38.  Defendants even copied the relationships between the main characters and the various robots in Plaintiff's *Rivets & Ruby*.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

1

2

3

4

5

6

7



•*Rivets & Ruby #2 et al* - Young male and female human characters as leads and cute, homemade sidekick robots.

8

9

10

11

12

13



• *Rusty Rivets* cartoon series - Young male and female humans and cute, homemade sidekick robots.

14

15     39.   Just as "Adlai" in *Rivets & Ruby # 3* throws his arms up in a gesture

16   of joy when "Atlas" appears, "Rusty" throws his arms up in a gesture of joy

17   when "Flingbot" appears in *Rusty Rivets*.

18

19

20

21

22

23

24



25     • Note that "Adlai" throws his arms up in a gesture of joy in *Rivets & Ruby* #3 when we first see "Atlas."

26     • Note that "Rusty" throws his arms up in a gesture of joy when we first see the "Flingbot" in *Rusty Rivets*.

27     •Note that "Adlai" and "Atlas" size differential is roughly the same as "Rusty" and the "Flingbot's."

28

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

**<u>Visual Elements</u>**

40.   Many of the visual elements of Plaintiff's *Rivets & Ruby* have been copied in *Rusty Rivets* as well. Both stories occur in salvage/recycling yards (a "robot graveyard" in Plaintiff's *Rivets & Ruby*, and a less threatening "recycling yard" in Defendants' *Rusty Rivets*), and both include a left-facing crane in the background center-frame of the scenes depicting the salvage/recycling yards.



*"Rusty Rivets (voiced by Kyle Harrison Breitkopf) – An engineer. He has his own mobile laboratory, which is based in a <u>recycling yard."</u>*

https://en.wikipedia.org/wiki/Rusty_Rivets#Characters

•*Rusty Rivets'* recycling **yard** is the same setting as *Rivets & Ruby's* Robot Grave**yard** (note use of "yard") conceptually speaking, but made less frightening for younger (eg., Nick Jr network's preschool demographic) audiences.



•Note visual presence of left-facing crane in background in center-frame, in both Robot Graveyard in *Rivets & Ruby* and recycling yard in *Rusty Rivets*.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

41. Defendants even copied the way the characters are portrayed compositionally on the cover of Plaintiff's comic book for their coloring books; Defendants mere flipped Plaintiff's cover horizontally.



- This cover for *Rusty Rivets: Rusty Robot Rescue* (Random House, 2017) displays a similar compositional arrangement as the cover for *Rivets & Ruby* collection when "mirrored" or flipped horizontally.

- Note oversized wrench wielded by "Ruby" on Rivets & Ruby cover is replaced on *Rusty Rivets: Rusty Robot Rescue* cover by "Crush," a robot shaped like a clamp.

42. Further, a key graphic element of each of Plaintiff's comic book covers includes Ruby holding an over-sized wrench, essentially wielding it as if it were a weapon. Defendants copy this pose almost exactly with Rusty wielding an over-sized wrench/tool, holding it aloft very much like Ruby on the cover of Plaintiff's comic books.

SPACH, CAPALDI & WAGGAMAN, L.L.P. *attorneys at law*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21





• Note that *Rivets & Ruby* "Ruby" makes identical use of an oversized wrench on the covers of *Rivets & Ruby* #1 and #2 (Radio Comix, 1998) and the *Rivets & Ruby Collection* (self-published, 2004), all widely available and accessible over a decade before premiere of *Rusty Rivets*.

22   43.   Like *Rivets & Ruby*, the main human characters in *Rusty Rivets* are
23 dressed similarly in casual pants and t-shirts, with Rusty and Ruby in
24 Defendants' cartoon both wearing tool belts which are virtually identical to the
25 tool belt worn by Ruby in Plaintiff's *Rivets & Ruby*.
26
27
28

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

44.  Plaintiff's character Cole Axial wears a t-shirt with an oval badge reflecting the opposite charges of electrical current; Defendants always depict their character "Rusty" wearing a t-shirt with circular badge showing a bolt of electrical current.



• Note that *Rivets & Ruby's* "Cole" and *Rusty Rivets'* "Rusty" wear bisected (ie., split) circle graphic designs on their t-shirts.

• Note that both circles feature stylized "S" shapes that refer to electricity/electronics and/or batteries (bolt commonly refers to battery charge).

Attached hereto as **Exhibit 1** is a document created by Plaintiff detailing the aforementioned striking similarities as well as additional similarities between Plaintiff's *Rivets & Ruby* and Defendants' *Rusty Rivets*.

**Access**

45.  Defendants had a high level of access to Plaintiff's original copyrighted works, with the *Rivets & Ruby* comic books being widely disseminated since 1998. *Rivets & Ruby* has been continuously available on the internet at websites such as www.newkadia.com and www.mycomicshop.com and at comic book trade shows, including San Diego Comic-Con International which has been described by *Forbes* as the "largest convention of its kind in the world" and by *Publishers Weekly* as "the largest show in North America." In 1997 and 1998, four separate solicitations were listed in *Diamond Previews*, the popular catalogue magazine for the comic book industry's primary distributor,

for comic book retailers to purchase *Rivets & Ruby*. In April 1998, *Rivets & Ruby* was featured in Sci-Fi Universe magazine in its Volume 4 Issue No. 1. In addition, Plaintiff and illustrator Kenny Kiernan promoted *Rivets & Ruby* for several years at San Diego Comic-Con International. Plaintiff also actively promoted *Rivets & Ruby* on his personal website for at least ten (10) years. Moreover, until recently, and with Plaintiff's express permission, illustrator Kenny Kiernan included copies of his artwork from *Rivets & Ruby* on his personal website, www.kennyk.com.

46. Furthermore, Michael O'Hare, believed to be one of the creators of *Rusty Rivets*, was in a position where he would have had access to *Rivets & Ruby*. Plaintiff is informed and believes and based thereon alleges that (a) O'Hare worked in and for the comic book industry over many years; and (b) in the comic book industry, the illustrators typically stay familiar with the work of other artists and illustrators, such that O'Hare was likely aware of the work of both Plaintiff, a twenty-year veteran of the comic book industry, and his illustrator partner Kenny Kiernan, including their work on *Rivets & Ruby*. Additionally, like Plaintiff, O'Hare has done work for Marvel and D.C. Comics. In fact, Plaintiff is informed that both Plaintiff and O'Hare worked for Marvel on *Spiderman* projects and that as a result O'Hare would likely have been aware of Plaintiff and *Rivets & Ruby*.  Plaintiff is informed and believes and based thereon alleges that O'Hare attended San Diego Comic-Con International in 2004, where Plaintiff promoted *Rivets & Ruby*.

47. Regardless, the strikingly similarities between the title, plot/theme, setting, character traits and interactions, and other visual elements of *Rivets & Ruby* and *Rusty Rivets* indisputably shows that Defendants had access to Plaintiff's original copyrighted work.

## **DEFENDANTS' INFRINGING MERCHANDISE**

48. By arrogating for their own use Plaintiff's original copyrighted artwork, characters, designs, stories, and other unique elements of expression without paying any license fees or other compensation, Defendants have diminished the value of Plaintiff's copyrighted works, have created confusion in the marketplace and, through the financial resources available to Defendants, have usurped the commercial potential of Plaintiff's original copyrighted works, all without compensating him for his original copyrighted artwork, characters, designs, stories, and other unique elements of expression.

49. Defendants' infringing works are not limited to the television shows broadcast throughout the world, but also include secondary sales of *Rusty Rivets* episodes on DVD and other media.

50. As a companion to Defendants' infringing *Rusty Rivets* animated cartoon show, Defendant Spin Master Ltd. has created a line of *Rusty Rivets* toys clearly based upon characters from Plaintiff's original copyrighted works which it manufactures, markets and/or sells in numerous countries and through several major outlets. Spin Master Ltd. promotes these infringing toys on its website, www.rustyrivets.com.



Complaint

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

51.   Defendants' infringing toys can also be found on eBay, Amazon, at Toys "R" Us, and other outlets. These toys copy design elements of characters appearing in Plaintiff's *Rivets & Ruby* copyrighted works, or are derived from such copyrighted works, including those elements discussed above.

52.   Defendants also have also created and sell and/or license a variety of infringing products based on or derived from Plaintiff's copyrighted *Rivets & Ruby* artwork, characters, designs, stories, and other unique elements of expression, such as *Rusty Rivets* backpacks, lunch boxes, costumes, books, stickers, puzzles, birthday cake toppers, games, paint sets, playing cards, educational materials and other items, too many to display here and many of which can be found on www.amazon.com.

53.   On page 14 of its 2017 Business Segment Report, Spin Master dubbed *Rusty Rivets* as the "perfect platform for an innovative toy line and demonstrates the synergy between entertainment content and physical product." The *Rusty Rivets* toy line is expected to launch *globally* in August 2018.

## DEFENDANTS' INFRINGING WEBSITES

54.   To further commercialize and profit from their infringing materials, Defendants have created and currently operate several websites that publicize and advertise the *Rusty Rivets* animated television show and related videos, toys and merchandise.

55.   For example, Defendant Spin Master Ltd. operates a website, www.rustyrivets.com, that offers information regarding Spin Master's infringing toys based upon and/or derived from Plaintiff's original copyrighted *Rivets & Ruby* artwork, characters, designs, stories, and other unique elements of expression and provides information where these infringing items may be purchased.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

56. Defendants Nickelodeon and Viacom operate a website, www.nickjr.com/rusty-rivets/, that provides links to infringing *Rusty Rivets* game, videos, and cartoon episodes based on or derived from Plaintiff's original copyrighted *Rivets & Ruby* artwork, characters, designs, stories, and other unique elements of expression.

## FIRST CAUSE OF ACTION

### (Copyright Infringement)

### [17 U.S.C. Sections 101, *et seq.*]

### (Against All Defendants)

57. Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

58. Plaintiff owns the copyright to *Rivets & Ruby*. He first copyrighted the text of *Rivets & Ruby* with the United States Copyright Office on or about August 7, 1996 (Copyright # TXu000752232). He completed the comic book in 1997 in conjunction with illustrator Kenny Kiernan, which he registered with the United States Copyright Office on or about May 21, 1997 (Copyright # VAu000399069). Plaintiff also owns a *Rivets & Ruby* adventure titled "*Whither cometh the Rivetman?: a brand-new Rivets-n-Ruby adventure!*"—which he registered in or about April of 1998 (Copyright #VA0000937568).

59. Plaintiff has complied in all respects with 17 U.S.C. Sections 101, *et seq.*, and secured the exclusive rights and privileges in and to the copyrights of the above-referenced works. Plaintiff has been and still is the sole proprietor of all rights, title, and interest in and to the copyrights in their respective works as referenced above.

60. Defendants' conduct violates the exclusive rights belonging to Plaintiff as owner of the copyrights in his comic book artwork, characters,

designs, stories, and other unique elements of expression, including without limitation Plaintiff's rights under 17 U.S.C. Section 106.

61.   Plaintiff is informed and believes and based thereon alleges that, as a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. Sections 504 and 505.

62.   U.S. Copyright law, 17 U.S.C. Section 504(b), makes clear that Plaintiff is entitled to recover as his actual damages all profits of Defendants attributable to their infringement of his original *Rivets & Ruby* copyrighted works:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and **any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages**. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted works. (Emphasis added.)

63.   As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff has suffered injury and damages, and is continuing to suffer injury and damages, including but not limited to infringement on his rights to his original copyrighted comic books, artwork, characters, designs, stories, and other unique elements of expression, as well as his right to develop other works derived from his copyrighted works. The total amount of such damages is

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

currently unknown and will be proven at the time of trial but is believed to be no less than $8 million (US).

64.  Plaintiff is informed and believes and based thereon alleges that, as a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. Section 504(b).

65.  Defendants' infringing conduct has also caused and is causing substantial and irreparable injury and damage to Plaintiff in an amount not capable of determination, and, unless restrained, will cause further irreparable injury, leaving the Plaintiff with no adequate remedy at law. Plaintiff is therefore entitled to an injunction to prevent further infringement of his copyrighted works, as provided under 17 U.S.C. Section 502.

66.  Plaintiff is also entitled to recovery of his reasonable attorneys' fees and costs, as provided under 17 U.S.C. Section 505.

## SECOND CAUSE OF ACTION
### (Contributory Copyright Infringement)
### (Against All Defendants)

67.  Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

68.  Defendants, and each of them, have engaged and continue to engage in the business of knowingly and willfully publishing, distributing, and broadcasting the infringing *Rusty Rivets* animated cartoon episodes, as well as importing, manufacturing, marketing, and selling infringing products by each of the other Defendants as well as by the wholesale purchasers of the infringing products from Defendants, who thereafter themselves distributed the infringing goods in commerce by, among other things, sales to ultimate consumers. Each of

the Defendants has acted in concert with those who have directly infringed Plaintiff's copyrights.

69. Defendants each have known that this infringing conduct occurs because they know that the *Rusty Rivets* animated cartoons and products derived from those cartoons infringe upon Plaintiff's copyrights in the *Rivets & Ruby* comic books, artwork, characters, designs, stories, and other unique elements of expression which are properly identified as copyrighted and which are registered with the U.S. Copyright Office.

70. The foregoing acts of contributory infringement by Defendants have been willful, intentional and purposeful, in disregard of and indifference to the rights of Plaintiff.

71. As a direct and proximate result of Defendants' acts of contributory infringement, Plaintiff is entitled to damages and Defendants' and others' profits pursuant to 17 U.S.C. Section 504(b).

72. Plaintiff is additionally entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. Section 505.

73. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured in money damages. Plaintiff has no adequate remedy at law and pursuant to 17 U.S.C. Section 502 is entitled to injunctive relief prohibiting Defendants from continuing to contributorily infringe Plaintiff's copyrights.

## THIRD CAUSE OF ACTION

### (Vicarious Copyright Infringement)

### (Against All Defendants)

74. Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

SPACH, CAPALDI & WAGGAMAN, L.L.P.
*attorneys at law*

75.   At all relevant times, Defendants had the right and ability to supervise, and or control the infringing conduct on Defendants' website. Defendants have exercised control over the rustyrivets.com and www.nickjr.com/rusty-rivets/ websites in a manner that has encouraged and facilitated copyright infringement.

76.   As a direct and proximate result of such activity, third parties, including licensees and wholesale purchasers from Defendants of the infringing products for resale, have infringed Plaintiff's copyrights in the *Rivets & Ruby* comic books, artwork, characters, designs, stories, and other unique elements of expression which are properly identified as copyrighted and which are registered with the U.S. Copyright Office.

77.   At all relevant times, Defendants have derived substantial and direct financial benefits from infringement of Plaintiff's copyrights by third parties who have purchased those infringing works or licenses from Defendants. Among other things, Plaintiff is informed and believes and based thereon alleges that, Defendants solicited purchases from, and have sold to, third parties retailers who had in turn sold the infringing works to consumers.

78.   At all relevant times, Defendants either have known or have been aware of facts of the circumstances making apparent that their infringing conduct was occurring.

79.   Defendants' conduct constitutes vicarious infringement of Plaintiff's copyrights in the *Rivets & Ruby* comic books, artwork, characters, designs, stories, and other unique elements of expression.

80.   The infringement of each of Plaintiff's rights in, inter alia, the copyright to *Rivets & Ruby* comic books, artwork, characters, designs, stories, and other unique elements of expression, constitute separate distinct acts of infringement.

81.   The foregoing acts of vicarious infringement have been knowingly, willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

82.   As a direct and proximate result of Defendants' acts of vicarious infringement, Plaintiff is entitled to damages and Defendants' profits pursuant to 17 U.S.C. Section 504(b).

83.   Plaintiff is additionally entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. Section 505.

84.   Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured in money damages. Plaintiff has no adequate remedy at law and, pursuant to 17 U.S.C. Section 502, is entitled to injunctive relief prohibiting Defendants from continuing vicariously to infringe Plaintiff's copyrights in the *Rivets & Ruby* comic books, artwork, characters, designs, stories, and other unique elements of expression.

## FOURTH CAUSE OF ACTION

### (Violation of Lanham Act § 43(a))

### [15 U.S.C. § 1125(a)]

### (Against All Defendants)

85.   Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

86.   Defendant Spin Master Ltd., through the acts and omissions described herein, have used in commerce words, terms, names, symbols, and devices which are false designations of origin and confusingly similar to those of Plaintiff, in a manner that is likely to cause confusion or mistake or to deceive consumers as to the affiliation, connection, or association of Defendant Spin Master Ltd. and its goods and services described herein with Plaintiff and

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

Plaintiff's goods and services, and/or as to the origin, sponsorship, or approval of all of the foregoing, in violation of 15 U.S.C. Section 1125(a).

87.  On February 27, 2014 and February 6, 2016, Defendant Spin Master Ltd. filed a total of two Intent-to-Use applications under Trademark Act Section 1(b), Serial Nos. 86373092 and 86899176, to register the mark "Rusty Rivets" (the "ITU Applications"). The ITU Applications highlight Defendant Spin Master Ltd.'s intent to use the mark "Rusty Rivets" for, among other things, "*comic books*" and "*comic books featuring animation*." Given that Plaintiff's copyrighted work *Rivets & Ruby* is a "*comic book featuring animation*, the likelihood that Defendant Spin Master Ltd.'s mark "Rusty Rivets" would cause confusion or mistake or deceive consumers is indisputable.

88. Defendant Spin Master Ltd.'s actions are willful, malicious, fraudulent, deliberate, and intended to confuse the public. Plaintiff is informed and believes and based thereon alleges that during the process of due diligence necessary to filing its ITU Applications, if Defendant Spin Master Ltd. was not previously aware of Plaintiff's original copyrighted works, it would have, and did, discover the existence of Plaintiff's *Rivets & Ruby* as a result of such due diligence, particularly given that its ITU applications noted its intent to use its trademark *Rusty Rivets* for, among other things, "*comic books*" and "*comic books featuring animation*."

89. Plaintiff is informed and believes and based thereon alleges that Defendant Spin Master Ltd. has attempted to register a trademark for "Rusty Rivets," Serial Nos. 86373092 and 86899176, by (a) making false and fraudulent statements of fact or omissions of fact to the United States Patent and Trademark Office in its ITU Applications, including a claim to the exclusive use and right in the marks, particularly given that the ITU Applications note Defendant Spin Master Ltd.'s intent to use the mark "Rusty Rivets" for, among other things,

"*comic books*" and "*comic books featuring animation*"; (b) omitting mention of the existence of Plaintiff and his copyrighted comic books, artwork, characters, designs, stories, and other unique elements of expression; and (3) failing to file a Statement of Use ("SOU") regarding the ITU Applications and the corresponding verification or declaration.

90.   Plaintiff is informed and believes and based thereon alleges that despite filing its original ITU application over four years ago, on or about February 27, 2014, and despite *Rusty Rivets*, Season 1 commencing on or about November 8, 2016, Spin Master Ltd. has still not filed its SOU regarding the ITU Applications and the corresponding verification or declaration. Plaintiff is further informed and believes and based thereon alleges that Defendant Spin Master Ltd. has failed to file a SOU, signifying bad faith and a clear abuse of the ITU Applications, because it has actual knowledge of its own infringement.

91.   In addition, Defendants Spin Master, Inc., Spin Master Studios, Inc., Nickelodeon Animation Studios Inc., and Viacom International Inc., in their distribution, exploitation and promotion of "Rusty Rivets," through the acts and omissions described herein, have used in commerce words, terms, names, symbols, and devices which are false designations of origin and confusingly similar to those of Plaintiff, in a manner that is likely to cause confusion or mistake or to deceive consumers as to the affiliation, connection, or association of Defendants and their goods and services described herein with Plaintiff and Plaintiff's goods and services, and/or as to the origin, sponsorship, or approval of all of the foregoing, in violation of 15 U.S.C. Section 1125(a).

92.   Plaintiff has suffered, and continues to suffer, damages to its profits, sales, and business as a result of Defendants' acts of false designation in an amount to be proven at the time of trial, but in no event less than $8 million.

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
*attorneys at law*

93.   Plaintiff has sustained, and will continue to sustain, great and irreparable injury in that it will lose customers and good will. Plaintiff has no adequate remedy at law, and if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to his goodwill and reputation.

94.   In addition to recovery of compensatory damages, Plaintiff also seeks recovery of its attorney's fees and costs pursuant to 15 U.S.C. Section 1117.

### FIFTH CAUSE OF ACTION

**(Unfair Business Practices)**

**[Cal. Bus. and Prof. Code § 17200, *et seq.*]**

**(Against All Defendants)**

95.   Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

96.   Defendants' violation of the protections and rights afforded to Plaintiff by registering his *Rivets & Ruby* comic books, artwork, characters, designs, stories, and other unique elements of expression under U.S. Copyright Law, and passing Plaintiff's artwork, characters, designs, stories, and other unique elements of expression off as their own constitutes an unlawful, unfair or fraudulent business act or practice, in violation of California Business & Professions Code Sections 17200, *et seq.*, which prohibits "any unlawful, unfair or fraudulent business act or practice."

97.   As a direct and proximate result of Defendants' unlawful and unfair business practices, including the misappropriation of Plaintiff's copyrighted comic books, artwork, characters, designs, stories, and other unique elements of expression, Plaintiff has suffered significant damages and, unless enjoined, Defendants will continue to cause great, immediate, and irreparable harm.

98. Plaintiff is therefore entitled to an injunction, as allowed under California Business & Professions Code Section 17203, to prevent Defendants from further infringing on Plaintiff's copyrighted comic books, artwork, characters, designs, stories, and other unique elements of expression.

## SIXTH CAUSE OF ACTION

### (Accounting)

### (Against All Defendants)

99. Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

100. Plaintiff alleges that Defendants' improper use of Plaintiff's intellectual property rights as alleged above has resulted in Defendants being unjustly enriched at Plaintiff's expense and at no cost to Defendants.

101. Defendants have retained an unknown amount of monies that rightfully belongs to Plaintiff.

102. Plaintiff is therefore entitled to an accounting of all profits gained by Defendants' illegal use of Plaintiff's intellectual property.

## SEVENTH CAUSE OF ACTION

### (Cancellation of Trademark Application)

### [15 U.S.C. § 1119]

### (Against Defendant Spin Master Ltd.)

103. Plaintiff re-alleges all the allegations above as though set forth in full in this Cause of Action.

104. Plaintiff is informed and believes and based thereon alleges that Defendant Spin Master Ltd. has attempted to register a mark for "Rusty Rivets," Serial Nos. 86373092 and 86899176, by (a) making false and fraudulent statements of fact or omissions of fact to the United States Patent and Trademark Office in its ITU Applications, including a claim to the exclusive use and right

in the marks, particularly given that the ITU Applications note Defendant Spin Master Ltd.'s intent to use the mark "Rusty Rivets" for, among other things, "***comic books***" and "***comic books featuring animation***"; (b) omitting mention of the existence of Plaintiff and his copyrighted comic books, artwork, characters, designs, stories, and other unique elements of expression; and (3) failing to file a SOU regarding the ITU Applications and the corresponding verification or declaration.

105. Plaintiff is informed and believes and based thereon alleges that during the process of due diligence necessary to filing its ITU Applications, if Defendant Spin Master Ltd. was not previously aware of Plaintiff's original copyrighted works, it would have, and did, discover the existence of Plaintiff's *Rivets & Ruby* as a result of such due diligence, particularly given that its ITU Applications noted its intent to use the mark "Rusty Rivets" for, among other things, "***comic books***" and "***comic books featuring animation***."

106. Plaintiff is informed and believes and based thereon alleges that despite filing its original ITU application over four years ago, on or about February 27, 2014, and despite *Rusty Rivets*, Season 1 starting on or about November 8, 2016, Spin Master Ltd. has still not filed its SOU regarding the ITU Applications and the corresponding verification or declaration. Plaintiff is further informed and believes and based thereon alleges that Defendant Spin Master Ltd. has failed to file a SOU, signifying bad faith and a clear abuse of the ITU Applications, because it has actual knowledge of its own infringement.

107. Defendant Spin Master Ltd.'s outstanding ITU Applications to register the mark "Rusty Rivets," Serial Nos. 86373092 and 86899176, could be used by Defendant Spin Master Ltd. to impair Plaintiff from registering and exploiting the mark "Rivets & Ruby" in Plaintiff's own name.

108. Plaintiff has suffered and continues to suffer damages by Defendant Spin Master Ltd.'s outstanding ITU Applications to register the mark "Rusty Rivets," Serial Nos. 86373092 and 86899176, because, in the event Plaintiff were to register the mark *Rivets & Ruby* in Plaintiff's own name, the registrations will impair Plaintiff's ability to register and exploit its trademark in "Rivets & Ruby" and to market, license, and franchise its characters, designs, and trademark to third parties.

109. As a result of Defendant Spin Master Ltd.'s false and fraudulent statements of fact or omissions of fact to the United States Patent and Trademark Office in its ITU Applications, Plaintiff is entitled to an order by this Court directing the Commissioner of Trademarks to cancel or otherwise invalidate Defendant Spin Master Ltd.'s ITU Applications, Serial Nos. 86373092 and 86899176, regarding registration of the mark "Rusty Rivets" under 15 U.S.C. Section 1119.

## **PRAYER**

Wherefore, Plaintiff Christopher L. Knowles, prays for judgment against Defendants as follows:

1. As to Plaintiff's First through Third Causes of Action for Copyright Infringement, Contributory Copyright Infringement, and Vicarious Copyright Infringement, Plaintiff is entitled to:

    a. For damages in an amount as shall be proven at the time of trial, including but not limited to any profits of Defendants that are attributable to the infringement, but in no event less than $8 million (US);

    b. For prejudgment interest thereon;

    c. For attorneys' fees as provided under 17 U.S.C. Section 505; and

d. For an injunction to prevent Defendants from further infringement of Plaintiff's original copyrighted works, as provided by 17 U.S.C. Section 502.

2. As to Plaintiff's Fourth Cause of Action for False Designation of Origin under 15 U.S.C. § 1125(a), Plaintiff is entitled to:

a. For damages in an amount as shall be proven at the time of trial, including but not limited to any profits of Defendants that are attributable to the infringement, but in no event less than $8 million (US);

b. For prejudgment interest thereon;

c. For attorneys' fees as provided under 15 U.S.C. Section 1117; and

d. For an injunction to prevent Defendants from further infringement of Plaintiff's original copyrighted works.

3. As to Plaintiff's Fifth Cause of Action for violation of California Business & Professions Code Sections 17200, *et seq.,* for an injunction to prevent Defendants from further infringement of Plaintiff's copyrighted works as allowed under California Business & Professions Code Section 17203;

4. As to Plaintiff's Sixth Cause of Action for Accounting, for an accounting of all profits gained by Defendants' illegal use of Plaintiff's intellectual property.

5. As to Plaintiff's Seventh Cause of Action for Cancellation of Trademark Application, an order directing the Commissioner of Trademarks to cancel or otherwise invalidate Defendant Spin Master Ltd.'s ITU Applications, Serial Nos. 86373092 and 86899176,

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

regarding registration of the mark "Rusty Rivets" under 15 U.S.C. Section 1119.

6. As to all Causes of Action:

    a. For costs of suit incurred herein; and

    b. For such other and further relief as the Court deems just and proper.

Dated: July 2, 2018           SPACH, CAPALDI & WAGGAMAN, LLP

By:  /s/ Madison S. Spach, Jr.
    Madison S. Spach, Jr.
    Thomas E. Walling
    Shaheen A. Etemadi
Attorneys for Plaintiff
CHRISTOPHER L. KNOWLES

SPACH, CAPALDI &
WAGGAMAN,
L.L.P.
attorneys at law

1

## **DEMAND FOR JURY TRIAL**

2       TO DEFENDANTS SPIN MASTER, INC., a Delaware corporation; SPIN

3 MASTER STUDIOS, INC., a Delaware corporation; SPIN MASTER LTD., a

4 Canada corporation; NICKELODEON ANIMATION STUDIOS INC., a

5 Delaware corporation; and VIACOM INTERNATIONAL INC., a Delaware

6 corporation:

7       PLEASE TAKE NOTICE that Plaintiff CHRISTOPHER L. KNOWLES

8 hereby demands trial by jury in this action.

9

10 Dated: July 2, 2018                     SPACH, CAPALDI & WAGGAMAN, LLP

11

12

13                     By:   /s/ Madison S. Spach, Jr._____

                        Madison S. Spach, Jr.

14                         Thomas E. Walling

                        Shaheen A. Etemadi

15                  Attorneys for Plaintiff

                 CHRISTOPHER L. KNOWLES

16

17

18

19

20

21

22

23

24

25

26

27

28