UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**      IN CHAMBERS – COURT ORDER

Before the Court is a Motion for Summary Judgment filed by defendants Spin Master, Inc., Spin Master Studios, Inc., Spin Master Ltd., Nickelodeon Animations Studios Inc., and Viacom International Inc. (collectively "Defendants") (Docket No. 62). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

**I.      Factual and Procedural Background**

Plaintiff Christopher Knowles ("Plaintiff") alleges that he is a professional illustrator and artist who has been involved in the comic book and entertainment industries for over twenty years. According to Plaintiff, he created a comic book titled <u>Rivets & Ruby</u> (<u>Rivets & Ruby</u> or the "Comic Book") in 1996, and ultimately published three issues of the Comic Book between 1996 and 1998. Plaintiff later created a compilation of the three issues that was published in 2004. The Complaint alleges:

> <u>Rivets & Ruby</u> features a pair of companions, tech savvy "Ruby" and "Rivets," the robot companion she constructed, who work together from a salvage yard containing used computers, robots and their spare parts. Under the tutelage of the senior mentor, "Professor Herbert," Rivets and Ruby construct, modify and customize existing computers and robots from the spare parts found in the salvage yard. Rivets and Ruby create, and are surrounded by, a group of satellite companion robots and characters to assist them in their various rescue adventures. One of the major themes of <u>Rivets & Ruby</u> is the interaction and socialization between humans, i.e. Ruby, and satellite companion robots.

(Compl. ¶ 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

    Plaintiff alleges that Defendants have infringed his intellectual property rights by producing and distributing an animated television show called <u>Rusty Rivets</u> (<u>Rusty Rivets</u> or the "TV Show") beginning in 2016.  The Complaint alleges:

> <u>Rusty Rivets</u> features a pair of tech savvy companions having virtually identical names, "Rusty Rivets" and "Ruby," who also work from a salvage (recycling) yard containing used computers, robots and their spare parts.  Rusty Rivets and Ruby similarly work under the tutelage of a senior mentor, "Mr. Higgins," to construct, modify and customize existing computers and robots from the spare parts contained in the recycling yard.  Rusty Rivets and Ruby similarly create, and are surrounded by, a group of satellite companion robots (called the "rescue bots") and characters that assist in their various rescue-themed adventures.  The array of satellite companions exhibits numerous striking similarities to, and in some instances are virtually identical with, the individual satellite companions that surround the two main characters in the original Rivets & Ruby.  Rusty Rivets is similarly based on the socialization and interactions between the "human" characters and the group of satellite robot companions.

(Compl. ¶ 5.)  In addition to what he alleges are similarities in the title, plot, theme, settings, characters, character interactions, and visual elements, Plaintiff alleges that Defendants had access to the Comic Book because it has been "widely disseminated since 1998," including through comic book sellers on the internet, and at comic book trade shows, including San Diego's annual Comic-Con convention.  Plaintiff also alleges that one of the creators of the TV Show, like Plaintiff, worked in the comic book industry for many years, including at some of the same publishers that Plaintiff worked at, and, on information and belief, attended Comic-Con in 2004 where Plaintiff promoted the Comic Book.

    The Complaint alleged claims for:  (1) copyright infringement; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) violation of the Lanham Act pursuant to 15 U.S.C. § 1125(a); (5) unfair business practices pursuant to California Business and Professions Code section 17200; (6) accounting; and (7) cancellation of trademark application pursuant to 15 U.S.C. § 1119.  The Court granted in part and denied in part Defendants' Motion to Dismiss.  Specifically, the Court dismissed with prejudice Plaintiff's claims for trademark infringement and unfair business practices and dismissed without prejudice the claim for cancellation of trademark application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

Defendants now seek summary judgment on Plaintiff's remaining claims for copyright infringement, contributory copyright infringement, vicarious copyright infringement, and accounting.

## II.    Legal Standard for Copyright Infringement

The elements of copyright infringement are: (1) ownership of a valid copyright and (2) unauthorized copying by the defendant of protected elements of the work. See Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003). The Ninth Circuit recently emphasized that, "[a]lthough our cases have not always made this point explicit, the second element has two distinct components: 'copying' and 'unlawful appropriation.'" Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018). "Proof of copying by the defendant is necessary because independent creation is a complete defense to copyright infringement. No matter how similar the plaintiff's and the defendant's works are, if the defendant created his independently, without knowledge of or exposure to the plaintiff's work, the defendant is not liable for infringement." Id. According to the Ninth Circuit:

> Proof of unlawful appropriation—that is, illicit copying—is necessary because copyright law does not forbid all copying. The Copyright Act provides that copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in [the copyrighted] work." 17 U.S.C. § 102(b). Thus, a defendant incurs no liability if he copies only the "ideas" or "concepts" used in the plaintiff's work. To infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works "substantially similar."

Id. "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) (citing Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990)). In determining if two works are substantially similar, the Ninth Circuit's test contains both an extrinsic and an intrinsic component. Funky Films, Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1077 (9th Cir. 2006). When assessing substantial similarity as a matter of law, "courts apply only the extrinsic test." Id. "[T]he intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

"The extrinsic test is an objective test based on specific expressive elements: the test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works." Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 624 (9th Cir. 2010). "If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical' to infringe." Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913-14 (9th Cir. 2010).

In applying the extrinsic test, a court "compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985). The extrinsic test places the burden on the plaintiff to identify the sources of the alleged similarity between the plaintiff's work and the allegedly infringing work. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994). Once the plaintiff has identified the alleged similarities, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." Id. In comparing these features, the Court must first filter out any "unprotectable elements." Id. According to the Ninth Circuit:

> Familiar stock scenes and themes that are staples of literature are not protected. In Berkic, we rejected finding substantial similarity based on scenes such as "depictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other." Scenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement.

Cavalier, 297 F.3d at 823 (quoting Berkic, 761 F.2d at 1294). "'Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.'" Shaw, 919 F.2d at 1363 (quoting Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987)).

Summary judgment is appropriate in copyright infringement actions "'if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no reasonable juror could find substantial similarity of ideas and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

expression.'" L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 848 (9th Cir. 2012) (quoting Shaw, 919 F.2d at 1355).

### III.     Evidentiary Issues

The parties have filed hundreds of evidentiary objections. Most of these evidentiary objections are misguided blanket and boilerplate objections or challenges to the relevance of particular information. To the extent the Court relies on a fact in this Order to which a party has objected, the Court overrules that objection.

The Court will more fully address several of the parties' other evidentiary disputes. First, in support of the pending Motion for Summary Judgment, Defendants referred to other works with elements similar to those Plaintiff accuses Defendants of copying from his work. Plaintiff objected to this evidence because it was provided in Defendants' counsel's Declaration. Under Federal Rule of Civil Procedure 56(c)(2), a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Although it may be the better practice to support or oppose summary judgment motions involving analytical dissection and the filtering of unprotectable elements by submitting supporting evidence through someone other than a party's counsel, Plaintiff's objection challenges the form in which Defendants submitted that evidence rather than its admissibility. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). This evidence of similarities in other works could be admissible through, for instance, Jeff Rovin, Defendants' expert witness. Defendants filed a Declaration and an Expert Report authored by Mr. Rovin in support of their Reply. The Court therefore overrules Plaintiff's evidentiary objection to evidence submitted through the Declaration of Defendants' counsel to the extent that objection is to the form in which the evidence is presented at summary judgment rather than the admissibility of its contents.

Second, Plaintiff's Opposition to the Motion for Summary Judgment relies heavily on the Declaration of Maureen Furniss, Ph.D., who Plaintiff designated as an expert witness. Through her Declaration and Expert Report, Dr. Furniss provides numerous opinions concerning what she considers the substantial and striking similarities between the TV Show and the Comic Book. Defendants filed an objection to the evidence submitted by Dr. Furniss. Among Defendants' objections is that Dr. Furniss' Declaration and Report "opine as to alleged, scattered similarities without any focus on protectable expression, and thus is not helpful to the trier of fact to understand the evidence or to determine a fact in issue. FRE 702(a). [Dr.] Furniss failed completely to conduct a filtration analysis, so her opinions are of no help to the Court in understanding the evidence, and add nothing to the evidence that the Court or factfinder would

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

not read themselves." (Docket No. 78 at 3:6-11; see also id. at 4:1-12.) Having reviewed Dr. Furniss' Declaration and Expert Report, the Court finds that she does not attempt to differentiate between protectable and unprotectable elements of the works. At least for the Court's resolution of the extrinsic test on summary judgment, the Court concludes that Dr. Furniss' opinions are not helpful to the Court at this stage of the proceedings. See Fed. R. Evid. 702(a) (providing that an expert "may testify in the form of an opinion or otherwise if . . . the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); see also Rice, 330 F.3d at 1180 ("The pertinent question before us, therefore, is whether in light of its gatekeeping role, did the district court abuse its discretion in disregarding the testimony of both Kauffman, Rice's expert witness, and defendant's expert witness? The answer is clearly no."). Consistent with another of Defendants' objections to Dr. Furniss' evidence, the Court also concludes that the similarities Dr. Furniss discusses are at such a general level that they are far too abstract to support copyright infringement claims or are otherwise unhelpful to the Court in performing the extrinsic analysis. See id. ("In deciding to disregard Kauffman's testimony, the district court could have simply deemed it unhelpful due to its abstract nature. Indeed, in the course of its written opinion, the district court analyzed and rejected the legal significance of many of the points set forth by Kauffman. The district court concluded that Rice's claims of substantial similarity were either foreclosed by the limiting doctrines of merger and scenes a faire, or too abstract to constitute copyright infringement. Because Kauffman's testimony merely restated many of these same generic similarities in expressive content, we are satisfied that the district court was well within its discretion in disregarding Kauffman's testimony."). Unless otherwise specifically noted, the Court therefore sustains Defendants' objections to the evidence provided by Dr. Furniss.

Third, Plaintiff objected to Mr. Rovin's Declaration and Expert Report because, among other things, they raised new evidence in Defendants' Reply that Plaintiff did not have an opportunity to address in his Opposition to Defendant's Motion. Mr. Rovin's Declaration and Expert Report include a detailed analysis of the asserted substantial similarities between Plaintiffs' Comic Book, Defendants' TV Show, and other prior works with what Mr. Rovin considers similar commonplace elements. In a prior order (Docket No. 85), the Court declined to strike Mr. Rovin's Declaration and supporting evidence because the parties have known all along that issues and facts related to potentially unprotectable elements in the parties' works were raised in this action, and were a subject of Defendants' Motion. The Court did, however, provide Plaintiff with an opportunity to file a Sur-Reply to respond to the issues and facts raised in Mr. Rovin's Declaration. Plaintiff's Sur-Reply, which is supported by declarations from Plaintiff and Plaintiff's counsel, but not Dr. Furniss, consist largely of an attack on Mr. Rovin's credibility and qualifications as a result of his employment history and his alleged habit of overstating his involvement in the production of comic books. At least on this record and at this stage of the proceedings, the Court concludes that the issues raised in the Sur-Reply relate to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

weight of Mr. Rovin's evidence rather than its admissibility. Despite having been provided an additional opportunity to provide expert testimony concerning the filtering of protectable from unprotectable elements, Plaintiff's Sur-Reply and Plaintiff's Supplemental Declaration did not engage in any such analysis. The Court therefore rejects Plaintiff's efforts to disqualify Mr. Rovin as an expert witness. Unless otherwise stated, the Court additionally overrules Plaintiff's objections to the evidence submitted by Mr. Rovin.

### IV.     Analysis

#### A.     Registration Requirement

Plaintiff has only registered with the United States Copyright Office Issues 1 and 2 of the Comic Book; Issue 3 was never registered. Because Plaintiff did not comply with the Copyright Act's registration requirement for Issue 3, he is unable to pursue infringement claims arising out of Issue 3. See Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, __ U.S. __, 139 S. Ct. 881, 887, 203 L. Ed. 2d 147 (2019) ("Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.' § 411(a). Therefore, although an owner's rights exist apart from registration, see § 408(a), registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."). Plaintiff's failure to register the copyright for Issue 3 prior to commencing this action forecloses any claim for infringement related to elements appearing only in Issue 3, like the images of the characters "Cal. Q. Lattor" and "Atlas" that Plaintiff claims are substantially similar to the TV Show's "Orbit" and "Flingbot."

#### B.     Access

"When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." Rentmeester, 883 F.3d at 1117. Under the "inverse ratio" rule, a plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work, if it can be shown that the defendant had access to the copyrighted work. Shaw, 919 F.2d at 1361; see also Rice, 330 F.3d at 1178. "The inverse ratio rule provides that the stronger the evidence of access, the less compelling the similarities between the two works need be in order to give rise to an inference of copying." Rentmeester, 883 F.3d at 1124. However, the inverse-ratio rule "assists only in proving copying, not in proving unlawful appropriation . . . . The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

In the absence of direct evidence of copying, "[t]o prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work. Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking plaintiff's work and the defendant's access, or (2) showing that plaintiff's work has been widely disseminated." Art Attacks Ink, LLC v. MGA Entm't Ins., 581 F.3d 1138, 1143 (9th Cir. 2009) (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481-82 (9th Cir. 2000)). "Absent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir. 1987).

All of the individuals involved in the development of the TV Show disclaim having had access to Plaintiff's Comic Book and Plaintiff admitted at deposition that he has no proof that any of those involved in the TV Show had access to his work. Nor is there evidence that Plaintiff's Comic Books were widely disseminated. Instead, Plaintiff relies on circumstantial evidence in an effort to prove access. This circumstantial evidence consists largely of the alleged similarities in the titles of the two works and the names of certain characters, including that the Comic Book's main characters are Rivets and Ruby, while the TV Show's main characters are Rusty Rivets and Ruby. Character names and titles are not subject to copyright protection. See 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles, and slogans" are "examples of works not subject to copyright."). "A title standing alone cannot be copyrighted, but the copying of a title 'may . . . have copyright significance as one factor in establishing' an infringement claim." Benay, 607 F.3d at 628 (quoting Shaw, 919 F.2d at 1362); see also id. at 629 (concluding that even though the titles were identical, the "shared title in this case is insufficient to overcome the overall lack of similarities between the protected elements of the works."). Plaintiff claims other similarities, including that the Comic Book has a character, Professor Herbert, and the TV Show has a character, Mr. Higgins, that both have last names beginning with the letter "H" and are older than the main characters. Plaintiff also asserts that similarities in the design elements of some of the robots appearing in the works establish that Defendants copied Plaintiff's work.

The Court concludes these examples, along with Plaintiff's other circumstantial evidence of access, is exceedingly weak. Unlike in Benay, where the titles are identical, Rivets & Ruby is not identical to Rusty Rivets. Plaintiff's evidence of access falls far short of supporting even a "bare possibility," let alone a "reasonable possibility," that Defendants had access to his Comic Book. Art Attacks Ink, 581 F.3d at 1143. Additionally, as will be discussed below in more detail when analyzing the similarities between Plaintiff's Comic Book and Defendants' TV Show, the Court concludes that whatever similarities may exist between the two works are not so

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

"striking" as to create a reasonable inference of copying to satisfy the access requirement.[1/]  The Court therefore concludes that Plaintiff's failure to establish more than a "bare possibility" of access to his work is fatal to his copyright infringement claims.  Id. at 1145 ("A reasonable jury could not have concluded that there was more than a 'bare possibility' that [defendant had access to plaintiff's work.]  Accordingly, we affirm the district court's grant of summary judgment to [defendant] on the copyright infringement claim.").

At a minimum, even if Plaintiff's weak circumstantial evidence supported an inference of access to survive this Motion for Summary Judgment, that evidence is so weak that Plaintiff does not benefit from the "inverse ratio" rule, and therefore does not have a reduced burden to show a "lesser degree of similarity" between his Comic Book and Defendants' TV Show.  See Rice, 330 F.3d at 1178 ("Under the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'").  Plaintiff has therefore failed to establish the requisite access or copying to defeat Defendants' summary judgment motion.

### C. Extrinsic Similarity Analysis

In Cavalier, the Ninth Circuit considered the similarity in the literary works separately from the visual depictions of the artwork included in the works.  See 297 F.3d at 825-26.  This Court will similarly analyze the alleged literary similarities between the Comic Book and the TV Show before addressing the similarities in the visual depictions contained in the works.

#### 1. Literary Similarities

In analyzing the asserted similarities between the literary elements of the works, the extrinsic test assesses the protectable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works.  Benay, 607 F.3d at 624.

##### a. Plot, Themes, Dialogue, Mood, Pace, Sequence of Events

Issue 1 of the Comic Book opens with a scene in a "Servotronic Disposal Unit" or "Robot Graveyard" where humans dispose of unwanted machines that no longer function properly.  The

---

[1/]  Although Plaintiff's failure to obtain a copyright registration for Issue 3 precludes an infringement claim for any story elements, characters, or visual depictions appearing only in that work, the Court has considered the alleged similarities between the Comic Book's characters Cal. Q. Lator and Atlas with the TV Show's Orbit and Flingbot to the extent those purported similarities could support an inference of access and finds that they are not substantially or strikingly similar in their protectable elements under the extrinsic test to support inferences of access or copying..

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

Comic Book depicts the graveyard as full of discarded robots. The first issue involves a bank robbery and Rivets being shot by a "polarity inversion ray." The second issue involves the hijacking of an airplane and provides information about the disgraced Professor Herbert who decided that robots should have souls. The TV Show, by contrast, is targeted at a pre-school audience and centers around 10-year-olds Rusty Rivets and his best friend Ruby who build robots from spare parts and modify existing machines to solve problems like a missing trophy, a school bus being stuck behind a landslide on a mountain road, a friend stuck on a mountain of tires, and following the clues of a treasure map.

During his Deposition, Plaintiff admitted that no episode of the TV Show copies any storyline or sequence of events from the Comic Book, and that the themes and dialogue were not similar.[2/] "No one can own the basic idea for a story. General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind." Berkic, 761 F.2d at 1293. Other than at "a very high level of generality," the abstract idea of humans interacting with robots, which is not protectable, the Court concludes that the works are objectively neither substantially nor strikingly similar in the plot, themes, dialogue, mood, pace, or sequence of events. Id.

      **b.**    **Characters**

Plaintiff contends that many of the characters in the two works are similar. The Ninth Circuit has "allowed copyright protection for characters who are especially distinctive." Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1452 (9th Cir. 1988). "[T]raits that flow naturally from the works' shared premises" do not "have significance under copyright law." Benay, 607 F.3d at 626.

The primary purported similarity relied upon by Plaintiff is that both his Comic Book and the TV Show have a character named "Ruby." As explained above, that the characters share the same name is not protectable. See 37 C.F.R. § 202.1(a). Nor are the characters substantially or strikingly similar in any protectable way. The Comic Book's Ruby is a young adult who is depicted on a date in Issue 2, and is frequently begging the robot Rivets to stop endangering himself as a crime-fighter. The TV Show's Ruby is a 10-year-old girl who supports Rusty Rivets and participates in the creation of their robots and machines. Plaintiff does not contend

---

[2/]    Dr. Furniss' opinions about what she views as similarities between the works are at such a general level that they do not describe elements protected by copyright. For instance, she claims: "The themes in both Rivets & Ruby and Rusty Rivets relate to the development of technology and the possibility that it can integrate with humanity to solve problems."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

that they look substantially similar. Other than their names, they are in no way objectively similar. Plaintiff's arguments concerning perceived similarities between Professor Herbert and Mr. Higgins — that both are older male authority figures with last names beginning with the letter "H" — are generic similarities that are not protectable under the extrinsic test. Nor is Professor Herbert "especially distinctive" when compared to the countless disgraced scientists who appear in literature. Despite Plaintiff's arguments to the contrary, there is also no protectable substantial similarity between the Comic Book's "Doggy Jones" — described as a dog robot head grafted onto a life-sized Gary Coleman action figure — and "Bytes," the robot dog appearing in the TV Show. The remaining alleged similarities between characters that Plaintiff focuses on largely relate to the visual depictions of robots rather than the literary aspects of the characters.

        c.     **Setting**

Plaintiff places significant importance on the fact that his Comic Book includes a "Servotronic Disposal Unit" or "Robot Graveyard" while the TV Show includes a salvage yard. The Robot Graveyard is depicted as a dark and foreboding location with piles of discarded robots strewn about. The TV Show's salvage yard is depicted as bright and organized, with some items in storage bins. As explained in the evidence submitted by Defendants, including the Declaration and Expert Report of Mr. Rovin, garbage dumps and salvage yards are common settings for stories involving robots. Indeed, the idea of a salvage yard or garbage dump as a setting for a story about robots is not protectable but instead flows from the basic premise of a location with plentiful spare parts for mechanical creations. See Berkic, 761 F.2d at 1293. The Court additionally notes that "New City," the larger setting within which the robot graveyard appears in the Comic Books, is a crime-infested urban dystopia, which shares no substantial similarities with the small town or suburban "Sparkton Hills" in which the TV Show is set.

        2.     **Visual Similarities**

"The basic mode of analysis for comparison of the literary elements applies to comparison of the art work. As with literary works, unprotectible elements should not be considered when applying the extrinsic test to art work." Cavalier, 297 F.3d at 825-26. An inexhaustive "list of relevant factors for evaluating artwork . . . [includes] the subject matter, shapes, colors, materials, and arrangement of the representations [that] may be considered in determining objective similarity in appearance." Id. at 826.

Plaintiff primarily contends that the visual depictions of the Comic Book's Rivets and "Desktop" characters are substantially or strikingly similar to the visual depictions of the TV Show's "Botasaur" and "Jack" characters. Rivets is a large, bulky robot, who wears a red shirt,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

blue coveralls, yellow gloves and boots, and a yellow hard hat with the letter "R." He has a hinged jaw with a single "tooth" that is evocative of the digging bucket that might be seen on an excavator or backhoe. The TV Show's Botasaur is a predominately green dinosaur robot with a hinged jaw made from a backhoe scoop with three teeth. Desktop is a robot that consists of a desktop computer on tank-style treads, with a human-like face on his screen, arms and hands, and a keyboard input. The TV Show's Jack is depicted as a blue square-shaped jack on triangular treads with two forklift-like arms that help lift things.

     Comparing Plaintiff's Rivets and the TV Show's Botasaur, Plaintiff and the Comic Book's illustrator Kenneth Kiernan testified that other than both characters having a hinged jaw, those characters are not similar. Mr. Kiernan also testified that "other than the fact that [Desktop and Jack are] both cube shaped, on some sort of treads with hinged arms," there are no other meaningful similarities between the characters. Additionally, as detailed in the evidence submitted by Defendants, and supported by their expert Mr. Rovin, hinged jaws and treaded box-shaped robots are common and not protectable. While the characters are all presumably depicted as being made from metal materials, that material, and the robot subject matter, "flow naturally from the works' shared premises" and are therefore not protectable. Benay, 607 F.3d at 626.

     At most, Rivets and Botasaur share backhoe-inspired hinged jaws within visual depictions that are otherwise not substantially or strikingly similar under the extrinsic test. "'Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.'" Shaw, 919 F.2d at 1363 (quoting Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987)). But that one similarity, based on a common item that itself flows from the premise of constructing robots from found items, and is only one small aspect of a robot that does not otherwise bear any objective similarities, is not "qualitatively important" for purposes of the substantial similarity analysis. Nor is this a situation in which the allegedly infringed and infringing works share "a significant number of unprotectable elements" strung together to form a protectable whole under the extrinsic test when both works share "so many generic similarities and common patterns." Metcalf v. Bochco, 294 F. 3d 1069, 1074 (9th Cir. 2002).

     The Court therefore concludes that Plaintiff has failed to establish that Defendants had access to or illicitly copied the protectable elements of either the literary or visual aspects of Plaintiff's Comic Book under the extrinsic test. When analyzed under that test, the alleged similarities, whether assessed individually or collectively, are not substantially or strikingly similar. As a result, Defendants are entitled to summary judgment on Plaintiff's claim for copyright infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-5827 PA (JCx) | Date | September 17, 2019 |
|---|---|---|---|
| Title | Christopher Knowles v. Spin Master, Inc., et al. | | |

### D. Claims for Contributory Infringement, Vicarious Infringement, and Accounting

"It is well-established that '[s]econdary liability for copyright infringement does not exist in the absence of direct infringement . . . .'" UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1031 (9th Cir. 2013) (quoting A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)). Here, the Court has concluded that Defendants are entitled to summary judgment on Plaintiff's claim for direct infringement. As a result, Defendants are also entitled to summary judgment on Plaintiff's claims for secondary infringement. See, e.g., Lawrence v. Sony Pictures Entm't, Inc., 534 F. App'x 651, 654 n.2 (9th Cir. 2013) ("Since Lawrence has failed to raise a material issue of fact with regard to direct copyright infringement of either the Video or the Book, she necessarily fails to establish contributory or vicarious copyright infringement." (citing A & M Records, 239 F.3d at 1013 n.2)). Similarly, "[t]he right to an accounting is derivative and depends on the validity of a plaintiff's underlying claims." Duggal v. G.E. Capital Commc'ns Servs., Inc., 81 Cal. App. 4th 81, 95, 96 Cal. Rptr. 2d 383, 393 (2000). Because Plaintiff's substantive claims fail as a matter of law, Plaintiff's claim for accounting also fails.

### Conclusion

For all of the foregoing reasons, the Court concludes that Plaintiff has failed to establish that Defendants had access to or copied Plaintiff's work. Nor does an extrinsic analysis support Plaintiff's efforts to claim infringement for the unprotectable similarities he has asserted in this action. Under that objective test, none of the elements contained in Plaintiff's work are substantially or strikingly similar to Defendants' TV Show. Because "no reasonable juror could find substantial similarity of ideas and expression," the Court grants Defendants' Motion for Summary Judgment. L.A. Printex, 676 F.3d at 848. The Court will issue a Judgment consistent with this Order and the Court's November 2, 2018 Minute Order granting in part and denying in part Defendants' Motion to Dismiss.

IT IS SO ORDERED.